OPINION OF THE COURT
Kenneth H. Lange, J.
This is a CPLR article 78 proceeding wherein petitioner seeks an order annulling a determination made at a Superintendent’s hearing on November 22, 1988; expunging all records pertaining to said hearing from petitioner’s institutional *18 files; and directing respondents to reinstate petitioner into the furlough program.
On November 11, 1988, petitioner, Richard Cunningham, submitted his urine for drug detection testing upon his return from his furlough program to Sing Sing Correctional Facility. After urine test results proved positive for cocaine, Correction Officer Nelson filed an inmate misbehavior report dated November 18, 1988, charging petitioner with rule violation 113.12, controlled substance. The report stated: "This [urine] specimen was tested on Nov. 14, 88 and confirmed positive cocaine [and tested] on Nov. 18, 1988.”
A Superintendent’s hearing was conducted by Hearing Officer John Mahoney on November 22, 1988. At the conclusion of the hearing, petitioner was found guilty of rule violation 113.12 and sentenced to 45 days’ keep lock and loss of telephone and referred to a drug program. Hearing Officer Mahoney set forth the evidence relied upon as follows: "C.O. Nelson’s report that Cunningham 78A2374 submitted a urine specimen upon his return from furlough. That specimen tested positive cocaine.” No witnesses testified at the hearing, and no documents were introduced into evidence.
On January 13, 1989, the Commissioner of the New York State Department of Correctional Services affirmed the determination made on November 22, 1988 by Hearing Officer Mahoney.
Petitioner thereafter brought this article 78 proceeding to review the determination made on November 22, 1988. Petitioner contends the recommended procedures for urine analysis testing were not followed, and that a proper foundation was not laid for the introduction of test results.
Respondents’ motion to dismiss this proceeding as moot is denied. In August 1989, petitioner was paroled, therefore, his application for reinstatement to the furlough program is moot. However, petitioner’s application for expungement of all records pertaining to the November 22, 1988 hearing from his institutional files is not moot. According to Matter of Grant v Senkowski (146 AD2d 948, 949): "Since petitioner’s prison disciplinary record might be considered by a future employer in reaching an employment decision, petitioner is entitled to have an institutional record free from improperly obtained findings of disciplinary rule violations * * *. Accordingly, we do not deem this appeal moot”.
The procedure for urinalysis testing is set forth in 7 NYCRR 1020.4 (e) (1) as follows:
*19 "(iii) The individual performing the urinalysis testing shall have been appropriately trained in the use of the testing apparatus and shall precisely follow procedures recommended by the manufacturer for the operation of the testing apparatus. If a positive result is obtained on the first test, the procedure followed and the results obtained shall be noted on the urinalysis procedure form.
"(iv) If a positive result is obtained on the first test, a second test shall be performed on the same sample, by a different trained individual, if available, and after new positive and negative control tests have been run. The results of the second test shall be noted on the urinalysis procedure form. If a positive result is obtained from the second test, the individual performing the urinalysis testing shall cause a misbehavior report to be issued.” (Emphasis added.)
The recommended forms for urinalysis testing are found in 7 NYCRR 1020.4 (f) ("Request for Urinalysis Test”) and 1020.4 (g) (form 2083, "Urinalysis Procedure Form”).
In this case, the recommended form for "Request for Urinalysis Test” was used and completed by the Sing Sing Correctional Facility. Form 2083, "Urinalysis Procedure Form” which is only "recommended” and not required, was not used. Replacement forms recommended by the SYVA company entitled, " 'Urinalysis Procedure Form’ (to be used with SYVA ETS)”, were however used. These substituted forms were designed in conjunction with the SYVA company and reflect usage of the "SYVA ETS” machine, whereas form 2083 reflects the usage of a different urinalysis testing machine.
A review of the two replacement forms reflect that petitioner’s urine sample was tested by two trained SYVA company operators on two separate days and that each trained operator complied with all procedures recommended by the SYVA company.
The urinalysis test used in this case, EMIT (enzyme multiple immunoassay technique), was addressed by the Court of Appeals in Matter of Lahey v Kelly (71 NY2d 135, 143) as follows: "positive EMIT test results when confirmed by a second EMIT test or its equivalent, are sufficiently reliable to constitute substantial evidence to support a determination by respondent that an inmate has used illegal drugs.”
Accordingly, I find the test results of petitioner’s urine sample reliable. On the other hand, a review of the November *20 22, 1988 hearing transcript does not reflect that a proper foundation had been laid to introduce the test results.
An adequate foundation for urinalysis test results is laid when two urinalysis procedure forms and the request for urinalysis form are introduced into evidence. (See, Matter of Newman v Coughlin, 110 AD2d 981, 983; 7 NYCRR 1020.5.)
The record of petitioner’s disciplinary hearing does not indicate that the pertinent forms were introduced into evidence. Hearing Officer Mahoney’s statement of what evidence he relied upon indicates only the inmate misbehavior report, and makes no reference to documents such as the request for urinalysis test form or the urinalysis procedure form. Additionally, respondents concede in their papers that they failed to provide "foundation documents” to petitioner at the hearing.
Respondents’ contention that petitioner waived any claim of the foundation requirement is rejected. Respondents have failed to show "a knowing and intelligent waiver of the foundation requirement by petitioner”. (Matter of Sanchez v Hoke, 116 AD2d 965, 966.)
The failure to lay a proper foundation at the Superintendent’s hearing does not require an expungement of the charge from petitioner’s record but rather a rehearing. In this case, as in Sanchez (supra, at 966): "where a proper foundation could have been laid and there was no incurable deficiency in the conduct of the test, the proper remedy is a new hearing”. (See also, Matter of Jennings v Coughlin, 99 AD2d 635, 636.)
Accordingly, this petition is granted to the extent that this matter is remitted to respondent for a new hearing on the alleged rule violation 113.12 and for reconsideration of any penalty to be imposed.